IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs September 20, 2016

**RUSSELL BROWN v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Bradley County**
**No. 15-CR-265     Andrew Mark Freiberg, Judge**

_____

**No. E2016-00437-CCA-R3-PC – Filed October 18, 2016**

_____

The petitioner, Russell Brown, appeals the denial of his petition for post-conviction relief, arguing that the post-conviction court erred in finding that he received the effective assistance of trial counsel. Following our review, we affirm the denial of the petition.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which THOMAS T. WOODALL, P.J., and ROBERT H. MONTGOMERY, JR., J., joined.

D. Mitchell Bryant, Athens, Tennessee, for the appellant, Russell Brown.

Herbert H. Slatery III, Attorney General and Reporter; Caitlin Smith, Assistant Attorney General; Stephen Davis Crump, District Attorney General; and Brooklynn Townsend, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTS**

On May 21, 2013, the petitioner was convicted by a Bradley County jury of first degree premeditated murder and aggravated arson, for which he received concurrent sentences of life and twenty years. His convictions were affirmed by this court on direct appeal, and our supreme court denied his application for permission to appeal. State v. Russell Brown, No. E2013-02663-CCA-R3-CD, slip op. at 1 (Tenn. Crim. App. Nov. 20, 2014), perm. app. denied (Tenn. Mar. 21, 2015).

Our direct appeal opinion reveals that the petitioner's convictions were based on his stabbing a friend to death in a motel room and then setting fire to his bed before

fleeing. Id. at 8-10. The petitioner turned himself in to the police approximately eighteen hours later and testified in his own defense at trial, relating the following: He and the victim had been friends since childhood, with their friendship eventually turning into "'a sexual relationship, based on drugs.'" Id. at 3. The petitioner explained that he did not consider himself a homosexual, but he engaged in sexual encounters with the victim because he was addicted to cocaine, which the victim provided for him. Id.

On New Year's Eve, 2011, the petitioner and the victim purchased alcohol, cocaine, and prescription pills and "socialized with the victim's roommates at his apartment." Id. at 3-4. At about 11:00 p.m., he and the victim checked into a motel, where they continued to drink and use drugs. The petitioner then penetrated the victim anally, and the victim performed fellatio on the petitioner. Id. at 4.

The petitioner testified that he never allowed the victim to penetrate him anally because he was not a homosexual. He said that the victim was aware that he was "'opposed' to that 'type of relationship[.]'" Id. That night, however, he awoke to find the victim penetrating him anally, which enraged him. He got the victim off of him, and the two men began a physical altercation. When he saw that a pocketknife that they had used earlier in the evening to cut their crack cocaine was open on the nightstand, he picked it up and stabbed the victim nineteen times. He then set fire to the bed, took the victim's car, and fled the scene. Id.

On cross-examination, the petitioner claimed that the victim had informed him that he had AIDS after letting the petitioner "perform on him, and attempting to have anal intercourse" with the petitioner. Id. The petitioner conceded that he was larger than the victim, that the victim was unarmed, that the fight was over when he picked up the knife with the intent to harm the victim, and that he had intentionally set the fire. Id.

The petitioner also presented in his defense a board-certified neurologist, Dr. Louise Ledbetter, who opined that the petitioner was "unable to make good decisions" and "lacked the ability to premeditate" due to his intoxication from the drugs and alcohol he had consumed that night. Id. at 5. In rebuttal, the State presented board-certified forensic psychiatrist Dr. Jerry Glynn Newman, Jr., who opined that the petitioner had the capacity to premeditate at the time of the murder. Id.

On June 29, 2015, the petitioner filed a *pro se* petition for post-conviction relief in which he raised several claims, including ineffective assistance of trial counsel. Specifically, he alleged that his trial counsel were ineffective for, among other things, failing to properly investigate the case, failing to familiarize themselves with the petitioner's psychiatric evaluation, failing to adequately raise the defense of self-defense, failing to disclose a conflict of interest because of prior representation of the victim, and

2

forcing the petitioner to testify in his own defense.

Following the appointment of post-conviction counsel, an evidentiary hearing was held on January 8, 2016. The petitioner's senior trial counsel, the public defender for the 10th Judicial District, testified that he was appointed to represent the petitioner while his case was still in general sessions court. He said he was already familiar with the petitioner because his office had represented him in other cases. Because of the severity of the charges in the case at bar, he was assisted in his representation by an assistant public defender, and it was the two of them who conducted the investigation of the facts of the case.

Senior trial counsel testified that his first conversation with the petitioner occurred at the justice center shortly after the petitioner had been arrested. The petitioner related what had happened and "was emphatic that he was under the influence of cocaine and other substances when the [victim] was killed." Senior trial counsel said the petitioner had given a statement to the Cleveland Police Department at the time of his arrest, and he was able to obtain a copy of that videotaped statement as part of discovery. After discussions with the petitioner and their investigation of the facts, he and junior trial counsel formulated a defense strategy of attempting to show that the petitioner had acted in self-defense and that he lacked the capacity to premeditate due to his voluntary intoxication.

Senior trial counsel testified that he retained the services of Dr. Ledbetter to review possible defenses of diminished capacity, legal insanity, and the inability to form premeditation. He never had any doubts about the petitioner's mental capacity, however, because he knew the petitioner and was unaware of his having any significant mental health history. In addition, the intelligent petitioner had no difficulty relating what occurred or discussing possible defenses. Before Dr. Ledbetter's meeting with the petitioner, he provided her with discovery, including the victim's toxicology results. He also informed the petitioner of the purpose of her visit and what questions she would be asking. Dr. Ledbetter did not provide a written report, at senior trial counsel's request, because counsel would have been required to turn over any written report to the State as part of reciprocal discovery. The petitioner "certainly knew" the rules regarding reciprocal discovery of reports, and there was "a meeting of the minds . . . between [the petitioner], Dr. Ledbetter, and [himself][] concerning [Dr. Ledbetter's] value as a trial witness and what [they] hoped to gain at trial from her . . . expert testimony." Senior trial counsel went on to explain that he called Dr. Ledbetter as an expert witness "largely on the issue of premeditation and whether or not [the petitioner] could knowingly commit the homicide."

3

Senior trial counsel testified that, in response to his having engaged Dr. Ledbetter as an expert witness, the State obtained its own expert who examined the petitioner, prepared a report, and testified at trial to rebut Dr. Ledbetter's opinion regarding the petitioner's inability to form the requisite intent. He and junior trial counsel discussed the evaluation with the petitioner, and the petitioner "knew he was go[ing] to be examined by a state expert." Senior trial counsel stated that he withdrew his initial objection to the introduction of the report of the State's expert witness because the report basically contained just the petitioner's account of what had happened, including the petitioner's claims of self-defense and voluntary intoxication.

Senior trial counsel testified that he did not know until the petitioner's post-conviction petition that junior trial counsel had represented the victim in an earlier case. The petitioner never mentioned his office's prior representation of the victim. The petitioner also never mentioned the victim's having ever engaged in any violent behavior, and the individuals who had partied with the victim and the petitioner on the night of the homicide reported to counsel that the two men had been friendly toward each other that night. In addition, he could not recall from the victim's criminal history, which he and junior trial counsel reviewed before trial, that the victim had any convictions for crimes of violence.

Senior trial counsel testified that he had a number of discussions with the petitioner about testifying, including the advantages versus disadvantages of the petitioner's taking the stand. However, because the State had made it clear to him that it did not intend to introduce the petitioner's self-serving statement to police, and there had been no blood drawn on the petitioner to show his level of intoxication, he encouraged the petitioner to testify to present his defenses of self-defense and voluntary intoxication:

> But going into the trial, [the prosecutor] had made it clear to me he was not putting that statement in, so I do recall talking to [the petitioner] and encouraging him that he needed to testify if the defense is self-defense, for us to have a defense in this case. It was important. Certainly when we're using that expert, Dr. . . . Ledbetter, to talk about intoxication, that he would have to testify because . . . there was no blood drawn on [the petitioner] at the time he was arrested to show that there was anything in his system. All these results were from [the victim]. Dr. Ledbetter had certainly reviewed all that crime scene evidence, all of that, but obviously she spoke at length with [the petitioner] about what had occurred, how it occurred, substances that had been consumed, so I certainly thought it was important based on the fact that we're going forward with voluntary intoxication to negate premeditation, that we've got a defense of self-defense and he needed to testify.

4

Senior trial counsel testified that he and the petitioner talked at length about how "sordid" the facts were and how it was "a very difficult case." He said he prepared the petitioner for both his direct and cross-examination testimony, and the petitioner was always consistent in his account of what occurred and that he had been under the influence of intoxicants and had acted in self-defense. Senior trial counsel testified he believed they put on adequate proof at trial for a jury instruction on self-defense, but the trial court refused his request for that instruction.

Senior trial counsel acknowledged that the petitioner expressed some dissatisfaction with his representation, filing *pro se* motions to have him relieved as his counsel and a complaint against him with the Board of Professional Responsibility. He said that the petitioner raised his concerns before the trial court prior to trial and that they attempted to resolve the matters. Overall, he and the petitioner "got along fine." He felt no animosity toward the petitioner, and the petitioner never expressed any animosity toward him. He could not recall the petitioner's having made a complaint about not wanting to testify in the case.

Junior trial counsel testified that the petitioner never told him that he had represented the victim on a sale and delivery of cocaine charge and that he was not aware of that fact until he learned of the allegations in the post-conviction petition and looked into the matter. He said he had researched the victim's criminal history before trial, but only in terms of trying to find "some type of assaultive behavior" on the part of the victim. On cross-examination, junior trial counsel testified that he looked only at the list of the victim's convictions when checking his record; he did not pull the judgments in order to see who represented the victim in each case.

The petitioner testified that he believed the trial judge "would have been obligated . . . to charge the jury with a self-defense instruction" had counsel presented his case differently. He said that counsel, who met with him five to seven times for an hour each time, never discussed a defense of self-defense but instead only voluntary intoxication. Counsel did not inform him, however, that voluntary intoxication is not in and of itself a defense. The petitioner stated that he was "very adamant" about not testifying because he believed it would be "detrimental to [his] well[-]being[.]" He said he felt no confidence in his ability to testify, but counsel told him that if he did not testify, Dr. Ledbetter would be unable to testify regarding the voluntary intoxication and premeditation issues. According to the petitioner, this information was "a convincing factor" in his decision to testify.

The petitioner testified that he was not properly prepared for his testimony "because it was a last minute decision" and that "most of the prepping" consisted of

counsel "just asking [him] about the events that occurred that night." He said he was prepared for his examination with Dr. Ledbetter, but counsel never told him that he would be examined by the State's expert and did not prepare him for that examination.

The petitioner testified that during one of junior trial counsel's visits with him, junior trial counsel kept referring to the victim by his first name, which seemed to indicate counsel had some personal knowledge of the victim, so he asked junior trial counsel about it, and junior trial counsel "brought [his previous representation of the victim] to [the petitioner's] attention." The petitioner said that he had an issue with that fact, so he brought it to senior trial counsel's attention by notifying him of it in a letter. He also expressed his concerns to junior trial counsel. Both senior and junior trial counsel, however, "pretty much brushed it off."

The petitioner also complained that trial counsel did not subpoena as witnesses the individuals who had been at the party on the night of the victim's death, who, according to the petitioner, could have testified that the victim was "an aggressive individual" and "a known fighter." Finally, the petitioner testified that he felt as if trial counsel's representation was "kind of . . . mechanical" and that he was not satisfied with the public defender's office from the beginning because he had "never had a positive experience with them."

Upon questioning by the post-conviction court, the petitioner acknowledged that evidence was brought before the jury about the statement of one of the New Year's Eve party attendees that the petitioner appeared impaired at the party. He further acknowledged that trial counsel vigorously questioned the State's witnesses about why the petitioner's blood was not tested and a rape kit was not performed on him.

On January 26, 2016, the post-conviction court entered a detailed and lengthy written order denying the petition on the basis that the petitioner had waived all his claims other than those relating to ineffective assistance of counsel and that the "proof necessary to support [his] post-conviction claims [of ineffective assistance] was wholly lacking." Thereafter, the petitioner filed a timely appeal to this court.

## ANALYSIS

The petitioner argues on appeal that trial counsel made a number of errors in representation, the cumulative effect of which was to deprive him of the effective assistance of counsel and a fair trial. Specifically, he argues that counsel were deficient for not subpoenaing witnesses who could have given testimony about the victim's violent nature to support a jury instruction on self-defense; for not adequately meeting with him before trial; for not preparing him for the examination by the State's expert witness or

attending his meeting with the expert; for not preparing him to testify in his own defense, which resulted in his being "forced into testifying at the last minute"; and for not addressing the concerns he raised prior to trial about junior trial counsel's having represented the victim in the past. The State responds by arguing that the post-conviction court properly found that trial counsel's performance was not deficient. We agree with the State.

The post-conviction petitioner bears the burden of proving his allegations by clear and convincing evidence. See Tenn. Code Ann. § 40-30-110(f). When an evidentiary hearing is held in the post-conviction setting, the findings of fact made by the court are conclusive on appeal unless the evidence preponderates against them. See Tidwell v. State, 922 S.W.2d 497, 500 (Tenn. 1996). Where appellate review involves purely factual issues, the appellate court should not reweigh or reevaluate the evidence. See Henley v. State, 960 S.W.2d 572, 578 (Tenn. 1997). However, review of a trial court's application of the law to the facts of the case is *de novo*, with no presumption of correctness. See Ruff v. State, 978 S.W.2d 95, 96 (Tenn. 1998). The issue of ineffective assistance of counsel, which presents mixed questions of fact and law, is reviewed *de novo*, with a presumption of correctness given only to the post-conviction court's findings of fact. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001); Burns v. State, 6 S.W.3d 453, 461 (Tenn. 1999).

To establish a claim of ineffective assistance of counsel, the petitioner has the burden to show both that trial counsel's performance was deficient and that counsel's deficient performance prejudiced the outcome of the proceeding. Strickland v. Washington, 466 U.S. 668, 687 (1984); see State v. Taylor, 968 S.W.2d 900, 905 (Tenn. Crim. App.1997) (noting that same standard for determining ineffective assistance of counsel that is applied in federal cases also applies in Tennessee). The Strickland standard is a two-prong test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. at 687.

The deficient performance prong of the test is satisfied by showing that "counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness

under prevailing professional norms." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland, 466 U.S. at 688; Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn.1 975)). The prejudice prong of the test is satisfied by showing a reasonable probability, *i.e.*, a "probability sufficient to undermine confidence in the outcome" that "but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694.

Courts need not approach the Strickland test in a specific order or even "address both components of the inquiry if the defendant makes an insufficient showing on one." 466 U.S. at 697; see also Goad, 938 S.W.2d at 370 (stating that "failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim").

In finding that the petitioner failed to meet his burden of demonstrating ineffective assistance of counsel, the post-conviction court, among other things, specifically accredited the testimony of both trial counsel, resolving "[a]ny and all disputes and conflicts in the proof and testimony" against the petitioner. After reviewing some of the overwhelmingly negative facts of the case, the court found that, "[d]espite th[e] mountain of proof pointing to the [p]etitioner's guilt, [senior trial counsel] formulated a cogent defense trial strategy" and engaged in "a valiant effort" to mitigate the petitioner's conduct by focusing the jury's attention on those facts that supported the petitioner's defenses of self-defense and voluntary intoxication. In sum, the court concluded that trial counsel "represented the [p]etitioner in an exceptional manner under very difficult circumstances."

The record fully supports the findings and conclusions of the post-conviction court. The testimony of senior trial counsel, an experienced defense attorney, established, among other things: that he conducted a thorough investigation of the facts, including whether the victim had any previous history of violent acts or violent crimes; spoke at great length with the petitioner about the case, including whether or not the petitioner should testify in his own defense; spoke with and prepared the petitioner for his examination by the expert witnesses; prepared the petitioner for his direct and cross-examination testimony; and was completely unaware of the fact that his office had previously represented the victim in a drug case. Junior trial counsel's testimony also established that he had no memory or awareness of having represented the victim until he learned of the allegations in the post-conviction petition and reviewed the records.

As for the petitioner's claim that trial counsel should have called witnesses to testify about the victim's violent nature, we note that the petitioner did not present those alleged witnesses at the evidentiary hearing. In order to succeed on a claim that counsel did not properly investigate or call favorable witnesses at trial, a petitioner must generally

8

elicit favorable testimony from those witnesses at the evidentiary hearing, as a post-conviction court may not speculate "on the question of . . . what a witness's testimony might have been if introduced" at trial. Black v. State, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990). Accordingly, we affirm the judgment of the post-conviction court denying the petition.

## CONCLUSION

Based on the foregoing authorities and reasoning, we conclude that the petitioner has not met his burden of showing that he was denied the effective assistance of counsel. Accordingly, we affirm the denial of the petition for post-conviction relief.

_____
ALAN E. GLENN, JUDGE